Case 4:14-cv-01380   Document 156   Filed in TXSD on 08/30/16   Page 1 of 9
United States District Court
Southern District of Texas
**ENTERED**
August 30, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES B. GOODMAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1380 |
| | § | |
| SMART MODULAR TECHNOLOGIES, INC., | § | |
| | § | |
| *Defendant*. | § | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Pending before the court are (1) defendant Smart Modular Technologies, Inc. ("Smart") motion to enforce the settlement agreement (Dkt. 136); (2) Smart's request for sanctions (*id.*); and (3) plaintiff James Goodman's motion to compel Smart to accept his proposed settlement documents and end the litigation (Dkt. 139).[1] The court held a hearing on these motions on August 23, 2016. After considering the motions, related documents in the record, arguments at the hearing, and the applicable law, the court is of the opinion that Smart's motion to enforce should be GRANTED IN PART AND DENIED IN PART, Smart's request for sanctions should be DENIED, and Goodman's motion should be DENIED.

**I. MOTIONS TO ENFORCE**

This is a patent case relating to U.S. Patent No. 6,243,315 ("the '315 Patent"), and the instant motions relate to the interpretation of a settlement agreement and whether Goodman should be sanctioned. On February 25, 2016, the court ordered the parties to attend mediation while this case was stayed pending *inter partes* review of the '315 Patent at the United States Patent and Trademark Office ("USPTO"). Dkt. 117; *see* 35 U.S.C. § 311 (noting that a person who does not own a patent may file a petition with the USPTO for *inter partes* review of the patent). The parties were unable

---

[1] The court also addresses a pending motion for costs (Dkt. 121) and a motion to strike a reply relating to the motion for costs (Dkt. 129), both of which are also currently pending, at the conclusion of this order.

to agree to a mediator, and the court appointed the Honorable T. John Ward to mediate. Dkts. 119, 123. On June 8, 2016, Ward filed an alternative dispute resolution memorandum indicating that the case had settled. Dkt. 132. On June 20, 2016, Goodman filed a memorandum advising that the parties had settled. Dkt. 134. He attached a settlement term sheet listing the following terms:

1. Goodman shall dismiss all legal claims with prejudice;
2. Goodman shall stipulate that all **accused products** do not **infringe** his U.S. Patent No. 6,243,315;
3. Goodman shall grant to Smart Modular a fully paid up, non-terminable, non-royalty bearing, perpetual **license** to the '315 patent;
4. Smart Modular shall terminate its *Inter Partes* Review of the '315 patent;
5. Smart Modular shall terminate its *Inter Partes* Review of the '315 Patent;
6. Goodman shall obtain Smart Modular's approval of the form of Goodman's dismissal and stipulation before Goodman files such dismissal and stipulation. Smart Modular shall not unreasonably withhold its approval.
7. the parties shall bear their own costs, including attorney fees; and
8. this term sheet and any agreement between the parties relating to this litigation or the '315 patent shall be **NON-CONFIDENTIAL**.

Dkt. 134 (emphasis added). The settlement term sheet also states:

> **THE PARTIES AGREE AND STIPULATE THAT THE DISTRICT COURT SHALL ENFORCE THIS TERM SHEET AS A SETTLEMENT AGREEMENT**.

*Id.*

After signing this settlement term sheet, the parties were unable to agree to the terms of a formal settlement agreement under paragraph 6. Dkts. 136, 139. Goodman contends that Smart unreasonably refused to agree to the documents he proposed, in violation of paragraph 6. Dkt. 139. Smart contends that the license to which they agreed should be a license that includes all of the rights enumerated in 35 U.S.C. § 271 and that Goodman's proposed settlement agreement narrows the license to exclude the ability to import or have the licensed product imported into the United States.

Dkt. 136. Smart argues that this is not a reasonable interpretation of the term "license" as used in the settlement term sheet. *Id.*

Smart also takes issue with Goodman's interpretation of the term "accused products" as it is used in paragraph 2. Dkt. 136. Goodman asserts that the term "accused products" does not include the DDR2, DDR3, and DDR4 products discussed in his complaint. Dkt. 139. Goodman contends that his direct infringement claims are limited to the *testing of* memory products DDR2, DDR3, and DDR4 and not the products themselves. *Id.* Goodman asserts that "[t]here are no Smart products accused of infringing on the '315 Patent."[2] Dkt. 139 (citing Goodman's response to Interrogatory No. 18).

Finally, Smart disagrees with limitations Goodman seeks to place on the meaning of the term "infringe" in paragraph 2. Dkt. 136. Goodman contends the term "infringe" as used in paragraph 2 means only direct infringement under 35 U.S.C. § 271(a), not the other types of infringement listed in § 271. Smart argues that "infringe" includes all types of infringement listed in the statute. Dkt. 136.

**A.     Legal Standard**

A district court has the "inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Del Bosque v. AT&T Advert., L.P.*, 441 F. App'x 258, 260 (5th Cir. 2011) (quoting *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir.1994)). Moreover, in this case, the settlement term sheet expressly gave the court the power to enforce the agreement. *See* Dkt. 134. When considering the validity of a settlement agreement in a case involving federal law, such as this patent case, the court applies federal law. See *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) ("Questions regarding the enforceability or validity of [settlement]

---

[2] Goodman admitted during the hearing that paragraph 2 of the settlement term sheet has absolutely no meaning since, under his definition, there are no "accused products," and stated he that he only agreed to the stipulation because it had no meaning.

3

agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law."). Under federal law, a settlement agreement is a contract. *Lopez v. Kempthorne*, No. CIV.A. H-07-1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010) (Harmon, J.). "The federal law of contracts 'uses the core principles of the common law of contracts that are in force in most states.'" *Id.* (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (per curiam)). Because "the federal common law of release is largely undeveloped and federal contract law is largely indistinguishable from general contract principles under state common law," the court may rely on federal cases, state contract law cases, and other treatises to the extent it finds them persuasive. *In re Deepwater Horizon*, 786 F.3d 344, 354–55 (5th Cir. 2015).

The primary goal of contract construction is to give effect to the parties' intent as reflected in the terms of the contract. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009). The contract must be read as a whole, and effect must be given to all parts if possible. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). Courts must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Unambiguous language must be enforced as it is written. *Don's Bldg. Supply v. One Beacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008). Language is ambiguous only if it is susceptible to more than one reasonable interpretation. *Id.* Language is not ambiguous merely because the parties interpret it differently. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). Whether a particular provision or the interaction among multiple provisions creates an ambiguity is always a question of law, and ambiguity must be determined by the four corners of the document without reference to parole evidence. *Page*, 315 S.W.3d at 527; *see also Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) ("Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity."). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit

4

extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

**B.     "License"**

During the hearing, both parties agreed that the settlement term sheet should be enforced as a settlement agreement. Goodman also agreed on the record that "license" as used in the settlement term sheet and eventual settlement documents, includes the right to "make, have made, use, sell, offer-to-sell, import, or have imported into the United States any and all inventions claimed in the '315 Patent." Smart stated that it would agree to Goodman's proposed license, which tracks the text of the settlement term sheet, since Goodman agreed to the meaning of "license" proposed by Smart on the record. Because the parties have reached an agreement on the record regarding this issue, Goodman's motion to compel and Smart's motion to enforce, to the extent they request the court to rule on the disputes centering around the meaning of "license," are DENIED AS MOOT.

**C.     "Accused Products" and "Infringe"**

The parties were unable to resolve their dispute relating to paragraph 2 of the settlement term sheet during the hearing. Goodman contends that paragraph 2's reference to "accused products" does not include Smart's DDR2, DDR3, or DDR4 products and that the term "infringe" as used in that paragraph relates only to infringement under 35 U.S.C. § 271(a). Smart contends that Goodman's understanding of these terms is not reasonable.

The court agrees with Smart that Goodman's interpretation of paragraph 2 is not reasonable. The second amended complaint starts out by indicating that the case was filed pursuant to 35 U.S.C. §§ 271 and 281. Dkt. 18 at 2. The '315 Patent is for a "COMPUTER MEMORY SYSTEM WITH A LOW POWER MODE." *Id.* ¶ 16. Paragraph 11 of the second amended complaint states that "Smart Modular sells and offers for sale at its web site memory modules DDR2, DDR3, DDR4 for use in this Judicial District for infringing the '315 Patent. There are no other reasonable non-infringing uses for the aforementioned memory modules." Dkt. 18 ¶ 11. The complaint further

5

states that the DDR2 and DDR3 are "direct infringers" of the '315 Patent "after the Smart Modular DDR2 and/or DDR3 is incorporated into an operational system." *Id.* ¶ 19. The second amended complaint contains a one-count charge of direct patent infringement, stating that Smart "directly infringes Claim 1 of the '315 Patent at its facilities located in Newark, California and possibly other locations in the U.S.A. during the development and/or testing of any of the memory products DDR2, DDR3, and/or DDR4, and such infringement is essential for Smart Modular to sell reliable products." *Id.* ¶ 23.

Clearly, the DDR2, DDR3, and DDR4 are the "accused products," as Goodman's own complaint indicates the only reasonable use of these three products is a use that directly infringes on the '315 Patent and his entire lawsuit is about how these products, when used, infringe on the patent. Moreover, if the court did not interpret the provision "accused products" in paragraph 2 to incorporate the products discussed in the second amended complaint, then the entire paragraph would be meaningless, and contracts should be construed to give meaning to all terms. The fact that Goodman admits that he wanted the term to be meaningless is parole evidence not relevant to the court's interpretation of the plain and unambiguous meaning of the document.

Goodman additionally indicates that his interpretation of the term "infringe" includes only direct infringement under 35 U.S.C. § 271(a), not the indirect types of infringement listed in the other subsections of the statute. Smart interprets "infringe" as including all types of infringement listed in 35 U.S.C. § 271. The court finds that the only reasonable construction in this context is that the term "infringe" encompasses all of the types of infringement outlined in 35 U.S.C. § 271, which is entitled "Infringement of Patent." The statute outlines multiple ways one may infringe a patent or be an infringer. *See* 35 U.S.C. § 271. Goodman's construction improperly limits the term to only one type of infringement. Because (1) the only reasonable interpretation of "accused products" includes the DDR2, DDR3, and/or DDR4, and (2) "infringe" in this context includes all of the

6

subsections of § 271, Smart's motion to enforce, as it relates to paragraph 2 of the settlement term sheet, is GRANTED.

## II. REQUEST FOR SANCTIONS

Smart urges the court to sanction Goodman for his "dilatory and unreasonable tactics that have vexatiously multiplied these proceedings." Dkt. 146; *see also* Dkt. 136. Smart asserts that Goodman is "maintaining unreasonable positions and filing unnecessary documents in an attempt to extend this litigation and extort Smart."[3] Dkt. 146.

The court has the inherent power to sanction an attorney. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123 (1991); *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). This power, however, "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. The U.S. Supreme Court has acknowledged that sanctions are often appropriate in circumstances in which an attorney has, for instance, been willfully disobedient to a court order or when the attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* at 45-46. "In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Chaves*, 47 F.3d at 156. "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions . . . .' A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.'" *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (citations omitted).

---

[3] The court notes that Smart has previously requested costs as sanctions for Goodman's alleged dilatory and unreasonable tactics, but analyzes only the instant request for sanctions relating to Goodman's conduct subsequent to the settlement negotiations. The court understands that Smart's previous request for sanctions for Goodman's counsel's overall conduct during the discovery phase of this case (*see* Dkt. 121) is no longer at issue due to the settlement term sheet's paragraph indicating that the parties would each bear their own costs. *See* Dkt. 134 ¶ 7.

The court finds that while Goodman's counsel's positions with regard to the settlement were not entirely reasonable, there is not enough evidence of improper behavior for the court to make a finding of bad faith. The request for sanctions is therefore DENIED.

### III. CONCLUSION

The court finds that the settlement term sheet is a binding settlement agreement. The parties have agreed to use the current phrasing of paragraph 3 of the settlement term sheet in light of Goodman's stipulation during the hearing. Thus, Smart's motion to enforce the settlement (Dkt. 136) is DENIED AS MOOT to the extent it seeks to modify the language of paragraph 3 of the settlement term sheet. Within ten (10) days of the date of this order, Smart and Goodman shall execute the license agreement attached as Exhibit C to the Declaration of David Fink that is attached to docket entry 139 (Goodman's proposed license agreement). This license, together with this order and Goodman's stipulation on the record, enforces paragraph 3 of the settlement term sheet.

Smart's motion to enforce (Dkt. 136) is otherwise GRANTED. Within ten (10) days of the date of this memorandum opinion and order, Goodman is ORDERED to sign and file with the court the stipulation and proposed order contained at docket entry 137 (Smart's stipulation and proposed order). This stipulation and proposed order enforces paragraph 2 of the settlement term sheet in accordance with the reasoning in this memorandum opinion and order.

Smart and Goodman shall file a joint petition to terminate the *Inter Partes* Review of the '315 Patent, as agreed in paragraph 5 of the settlement term sheet, one business day after Goodman conveys the license and files the stipulation of noninfringement and the court enters the stipulation.

Each party shall bear its own costs, including attorneys' fees, in accordance with paragraph 7 of the settlement term sheet.

Because each party agreed to bear its own costs, Smart's pending motion for costs (Dkt. 121) is DENIED AS MOOT.

The paragraphs of the settlement term sheet dealing with dismissal and forms of dismissal and the stipulations (paragraphs 1, 5, 6) are no longer relevant, as all of the claims and counterclaims in this case are hereby DISMISSED WITH PREJUDICE in accordance with the parties' settlement agreement.

Finally, Goodman's pending motions to strike two of Smart's replies (Dkts. 129, 147) are DENIED AS MOOT, Smart's request for sanctions (Dkts. 136, 146) is DENIED, and Goodman's motion to compel Smart to accept his proposed settlement documents (Dkt. 139) is DENIED.

Signed at Houston, Texas on August 30, 2016.

_____
Gray H. Miller
United States District Judge